*953 OPINION
By the Court,
Steffen, J.:
This is the third time appellant Michael Ray Hogan has sought *954 relief in this court from his first-degree murder conviction and sentence of death. The instant appeal is from the district court’s order dismissing Hogan’s post-conviction petition for a writ of habeas corpus. For reasons discussed hereafter, we conclude that Hogan’s appeal is without merit and therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The details of Hogan’s crimes are set forth in this court’s opinion on direct appeal in Hogan v. State, 103 Nev. 21, 732 P.2d 422 (1987), cert. denied, 484 U.S. 872 (1987). Briefly stated, Hogan murdered his female companion, Heidi Hinkley, with a firearm and thereafter fired five bullets into the body of Heidi’s young daughter who managed to survive and testify against Hogan. A jury convicted Hogan of first-degree murder and attempted murder, each with the use of a deadly weapon. After the penalty phase of the trial, the jury found Hogan deserving of death and he was sentenced accordingly. We affirmed Hogan’s convictions and sentences on direct appeal, id., and later dismissed Hogan’s appeal from the district court’s denial of his petition for post-conviction relief based largely upon a claim of ineffective assistance of counsel.
The instant appeal challenges the district court’s refusal to issue habeas relief. Hogan’s petition for a writ of habeas corpus was rejected by the district court on grounds of procedural default or abuse of the writ and law of the case. For reasons discussed hereafter, we conclude that the district court was correct in its ruling and affirm.

DISCUSSION

Hogan first challenges the district court’s determination that his petition for a writ of habeas corpus was a procedurally infirm abuse of the writ on grounds that neither of the two aggravating circumstances found by the jury were valid, and that he is therefore actually “innocent” of committing a capital crime.
Specifically, Hogan contends that a procedural bar to his petition for a writ of habeas corpus based upon an abuse of the writ does not exist where he is able to demonstrate that he is actually innocent of the aggravating circumstances used to qualify him for a capital sentence. Citing the recent United States Supreme Court case of Sawyer v. Whitley, 112 S.Ct. 2514, 2517, reh’g denied, 113 S.Ct. 21 (1992), Hogan stressed the Court’s ruling that a petitioner may demonstrate “actual innocence” of the crime for which he was convicted or the penalty imposed if he shows “by clear and convincing evidence that but for a constitutional error, *955 no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law.”
Hogan assails the validity of the aggravating circumstance found by the jury relating to the commission of a prior felony “involving the use or threat of violence to the person of another.” NRS 200.033(2). The primary thrust of Hogan’s contention is that the Iowa manslaughter conviction was constitutionally infirm and that, in any event, the State did not prove that the Iowa felony involved the use or threat of violence to the person of the victim. Hogan seeks to support his claim of constitutional infirmity by referring to the stipulation of an Iowa assistant county attorney thirteen years after Hogan’s guilty plea that the plea was unconstitutional. The contention is unavailing. First, the Iowa district court denied Hogan’s petition for a writ of habeas corpus on grounds that relief was barred by the running of the statutory period for an application for post-conviction relief. On appeal, the Iowa Supreme Court affirmed the ruling of the Iowa district court, stating:
[Hogan’s] alleged “ground of fact or law” is that he was unaware, until his Nevada conviction for murder that his 1971 Iowa conviction for manslaughter would serve to severely enhance the penalty for a subsequent crime .... [I]t is an “obvious fact of life that most criminal convictions do in fact entail adverse collateral consequences.” Sibron v. New York, 392 U.S. 40, 55 (1968). Hogan’s inability to accurately predict future events, and adjust his behavior accordingly, is not the sort of factual circumstance reasonably triggering the ground of fact exception of section 663A.3 .... We are persuaded that a reasonable interpretation of the statute compels the conclusion that the exonerating ground of fact must... be “relevant and likely [to] change the result of the case. ” [Citation omitted.] Hogan’s new-found insight clearly falls outside this category.
Hogan v. State, 454 N.W.2d 360, 361 (Iowa 1990) (emphasis added). It is thus clear that the Iowa Supreme Court found no factual basis for relieving Hogan of his felony conviction for manslaughter and there is no basis for presuming that the Iowa court ignored constitutional grounds for granting such relief.[1]
*956 Hogan insists that irrespective of the constitutionality of his Iowa conviction, there was no evidentiary basis for finding that his crime involved the use or threat of violence on the person of his victim. Hogan is wrong. The record reflects that before the district court allowed evidence of the Iowa conviction to be introduced as an aggravating circumstance, the State provided the court with a transcript of the Iowa plea proceeding that conclusively demonstrated that Hogan resorted to violence in the commission of his crime. In the plea hearing before the Iowa district court on January 25, 1971, the following colloquy occurred, in pertinent part, between Mr. Dutton, the prosecutor, and Mr. Rothschild, attorney for the defendant, Hogan:
Mr. Dutton: I think perhaps the Court should be apprised of our reason for accepting that plea [manslaughter, where Hogan was charged with open murder]. As the Court was aware last week, the body was re-autopsied and it was determined at that time that the blow which the victim received on the top of the car during an altercation on the main street of Dunkerton was the cause of the fracture and the cause of death, and the facts leading up to that altercation and that blow are indicative of the crime of manslaughter as opposed to first or second degree murder, and it is our conclusion from reviewing the evidence in light of this new medical evidence that a plea to manslaughter is not only appropriate, but proper under the circumstances.
Mr. Rothschild: For the record, Your Honor, the Defendant now appears in person and by counsel and hereby enters a plea of guilty to the crime of manslaughter. I might say also to the statement of Mr. Dutton, when the Amended Minutes were filed Mr. Martin [defendant’s co-counsel] and I checked out the theory of the fracture which resulted from the blow on the car as the cause of death. We checked with medical authority and came to the conclusion that, indeed, this was what happened and that this was the cause of death. Mr. Hogan at this time still denies that he pushed this girl out of the car, but he does admit that he struck her head against the car, and on our advice he has entered a plea of guilty thereon.
(Emphasis added.)
As indicated above, the district court was provided with the referenced and quoted transcript of Hogan’s plea hearing before the jury was allowed to consider Hogan’s manslaughter conviction as an aggravating circumstance under NRS 200.033(2). The district court did not err in allowing the State to introduce *957 evidence of the Iowa manslaughter conviction to the jury, and there was substantial evidence to support the finding by the jury that the State had proved the existence of this aggravating circumstance beyond a reasonable doubt.
The second aggravating circumstance found by the jury and challenged by Hogan is that “[t]he murder was committed by a person who knowingly created a great risk of death to more than one person by means of a weapon, device or course of action which would normally be hazardous to the lives of more than one person.” NRS 200.033(3) (emphasis added). Hogan insists that the facts surrounding his crime demonstrate the invalidity of this aggravator. In support of the proposition, Hogan cites Jimenez v. State, 105 Nev. 337, 775 P.2d 694 (1989). Jimenez involved two victims, each of whom was stabbed to death by Jimenez with a different knife. There we held that the stabbings did not justify a finding that Jimenez knowingly created a great risk to more than one person by means of a weapon that would normally be hazardous to the lives of more than one person. Id. at 342, 775 P.2d at 697. We also stated:
Our cases reflect the view that the employment of a weapon, device or course of action that is intrinsically hazardous to more than one life is a necessary predicate to a finding under NRS 200.033(3). Thus, in Moran v. State, (citation omitted) we concluded that firing a gun in an apartment with only the victim present, and no other persons known by the perpetrator to be in close proximity to the crime scene, did not constitute an aggravating circumstance under NRS 200.033(3). However, we also held in Moran that firing a gun at the victim with another person nearby did satisfy the requirements of the statute.
Id. at 343, 775 P.2d at 697-98.
Moran alone would validate the finding of the NRS 200.033(3) aggravator in the instant case where Hogan knew, as he fired his gun at his murder victim, that the victim’s teenage daughter was in close proximity to the crime scene. Perhaps more to the point, however, is the fact that Hogan engaged in a clear and deliberate course of conduct that created a hazard to more than one person. Indeed, this court so ruled in Hogan’s direct appeal as we recognized that there was a divergence of authority on the point and then held “that the statute [NRS 200.033(3)] includes a ‘course of action’ consisting of two intentional shootings closely related in time and place, particularly where the second attack may have been motivated by a desire to escape detection in the original shooting.” Hogan, 103 Nev. at 24-25, 732 P.2d at 424.
*958 In Commonwealth v. Stoyko, 475 A.2d 714 (Pa. 1984), cert. denied, 469 U.S. 963 (1984), the court determined that the defendant had created great risk to the person of another by “repeatedly ramming [the victim’s] car until it was forced off the highway, aiming a shotgun through the window of the car and firing three shots, all the while aware, by his own admission at trial, that there was an ‘other lady’ in the car.” Id. at 721.
In the appendix to State v. English, 367 So.2d 815 (La. 1979), the English court discusses a statutory aggravating circumstance similar to the one at issue here as follows:
The jury also found that the defendant knowingly created a risk of death or great bodily harm to more than one person. We agree that the evidence supports the theory that the defendant intended to commit each murder by a distinct act, that is, by shooting each intended victim individually at short range. Arguably, the commission of any one of the individual murders would not have created the risk of death or great bodily harm to the other intended victims during the murder of the individual victim. This suggestion is supported by the fact that the killing of the victim did not cause injury or death to the other intended victims, both of whom escaped. Arguably, the legislature may have intended this aggravating circumstance to apply only to situations in which, for instance, the defendant sets a fire or explodes a bomb in an inhabited building, or shoots randomly into a crowd, where the same act which kills the victim also knowingly creates a risk of death or great bodily injury to more than one person. The more probable legislative intent is that the extreme penalty of death may be justified when the single consecutive course of conduct contemplates and causes the knowing creation of great risk of death or great bodily harm to more than one person, as here.
Id. at 824 (emphasis added). Accord State v. Williams, 480 So.2d 721, 726-27 (La. 1985); State v. Glass, 455 So.2d 659 (La. 1984), cert. denied, 471 U.S. 1080 (1985), reh’g denied, 472 U.S. 1033 (1985) (aggravator satisfied where defendant, by a single and consecutive course of conduct contemplates and causes great risk of harm to more than one person).
The Supreme Court of Florida, in Alvord v. State, 322 So.2d 533, 540 (Fla. 1975), cert. denied, 428 U.S. 923 (1976), held that three consecutive murders, each carried out by strangulation with the use of a rope, satisfied the aggravator of creating “great risk of serious bodily harm by death to other persons.”
We cite the above case authorities in reaffirmation of our *959 previous ruling on this issue in Hogan’s direct appeal. It is of no consequence to multiple victims of a violent crime whether their deaths or injuries result from a weapon directed at each victim specifically or by random shootings or the use of a scattergun or other weapon of broader impact. Under the “course of action” aspect of NRS 200.033(3), the statute is satisfied if the perpetrator knowingly creates a great risk of death to more than one person by embarking upon a course of conduct that would normally be hazardous to the lives of more than one person. Obviously, one who intends to commit multiple murders within a closely related time and place engages in a course of conduct inherently hazardous to the life of more than one person. As we held in the opinion generated from Hogan’s direct appeal, there was no error in finding that Hogan had engaged in criminal conduct falling within the purview of the aggravating circumstance defined by NRS 200.033(3).
The distillate of the foregoing analysis is that this court, on direct appeal, thoroughly considered and ruled valid the two aggravating circumstances found by the jury in qualifying Hogan for the penalty of death. That ruling is now the law of the case. See Hall v. State, 91 Nev. 314, 535 P.2d 797 (1975). The instant appeal merely supplies a more focused review of the issues stemming from the illumination of hindsight. As we stated in Hall, however, the “doctrine of the law of the case cannot be avoided by a more detailed and precisely focused argument subsequently made after reflection upon the previous proceedings.” Id. at 316, 534 P.2d at 798-99.
Moreover, Hogan has failed to demonstrate a basis for habeas relief under the exceptional provisions of NRS 34.810. Specifically, Hogan has not shown good cause for again seeking relief on the theory that the two aggravating circumstances were invalid. Despite Hogan’s attempt to cast his theories in a new factual and legal light, his efforts have revealed no justification for overcoming the procedural bar of NRS 34.810. Absent entirely is a basis for a finding of good cause attributable to a “fundamental miscarriage of justice . . . resulting] from a failure to entertain the claim.” McCleskey v. Zant, 111 S.Ct. 1454, 1470 (1991). Equally apparent from the record is Hogan’s failure to forward a “colorable showing of factual innocence” that would justify elevating concerns of fundamental justice over the need to demonstrate good cause in entertaining a repetitive claim for relief. Id.
Additionally, Hogan has failed to show that he has sustained *960 actual prejudice by any alleged constitutional error in the trial court or on appeal. Hogan’s burden of demonstrating “not merely that the errors of trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, in affecting the state proceeding with error of constitutional dimensions” has not been met. United States v. Frady, 456 U.S. 152, 170 (1982). Indeed, as we have previously held, the threshold burden of proving that the aggravating circumstances were infected with constitutional error has not been satisfied. Accordingly, there is no basis for a claim of prejudice.
The district court correctly discerned that Hogan’s habeas petition constituted an abuse of the writ. Hogan has simply failed to meet his burden of proving “by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law.” Sawyer, 112 S.Ct. at 2517.
Hogan’s attempt to revisit the issue of ineffective assistance of counsel at the trial and appellate levels must also fail. We have previously determined, and it is now the law of the case, that Hogan’s trial and appellate counsel were clearly effective and that the criteria for relief established by Strickland v. Washington, 466 U.S. 668 (1984), have not been satisfied. The primary gravamen of Hogan’s ineffective assistance of counsel claim relates to what he considers the failure to investigate the constitutional validity of his Iowa conviction. We have revisited the Iowa conviction in the instant case and have concluded from the evidence of record that any additional investigation of the circumstances of that conviction by defense counsel would have been unavailing. Hogan’s contention is without merit.
We have carefully reviewed the other issues raised by Hogan and conclude that they are without merit and that, given our disposition of this appeal, they need not be addressed.

CONCLUSION

For the reasons discussed above, the district court’s order dismissing Hogan’s petition for a writ of habeas corpus (post-conviction) is affirmed.
Rose, Young and Shearing, JJ., concur.

In this court’s opinion resulting from Hogan’s direct appeal, we considered and rejected Hogan’s contention that his guilty plea to felony manslaughter in the Iowa district court was constitutionally infirm. Notwithstanding the highly belated “stipulation” of the Iowa assistant county attorney to the contrary, we expressly held, after reviewing the transcript of the Iowa plea canvass, that “each of the rights enumerated in Boykin [Boykin v. Alabama, 395 U.S. 238 (1969)] was waived . . . .” Hogan, 103 Nev. at 24. 732 P.2d at 424. n.1.